## The People v. Thomas Hawksley.

*Criminal law—Larceny—Possession—Corpus delicti—Evidence.*

> 82    71|
> Case 2
> 153    296|

Direct proof of the *corpus delicti* cannot always be obtained. It and the defendant's guilt can rest together on one foundation of circumstantial evidence; and in this case it was properly left to the jury to determine whether the larceny charged had been proven.[1]

So *held,* where the watch which respondent was charged with stealing was shown to be the property of a person from whom respondent admitted receiving it shortly before the death of the owner. The watch was found on respondent's person, although he had no interest in it, according to his own story, and he deliberately made false statements in regard to it at a time when, if his story was true, he could have had no motive to lie; and there was evidence from which the jury might find that respondent induced a witness to swear falsely in order to acquit him.

Error to Wayne. (Brevoort, J.) Argued June 13, 1890. Decided July 2, 1890.

Respondent was convicted of larceny, and sentenced to

---

[1] See *People v. Walters,* 76 Mich. 195.

State prison for 3 years and 6 months. Judgment affirmed. The facts are stated in the opinion.

*G. X. M. Collier* and *F. M. McMath,* for respondent.

*B. W. Huston,* Attorney General, and *James V. D. Willcox,* Prosecuting Attorney, for the people.

GRANT, J. The respondent was convicted of the larceny of a watch on November 27, 1889. The principal question raised upon the record is that the court erred in permitting evidence to be given of defendant's possession of the watch until facts and circumstances had been shown from which the jury might find the possession to be a guilty possession, and that the watch in question had actually been stolen.

It is contended on behalf of respondent that there is no evidence in the record from which the jury could find that the watch was stolen, or that the defendant was guilty of the crime.

The watch was alleged to be the property of one Soule. Soule had been in the habit of visiting the house where it is claimed the crime was committed, and for some days previous had spent the most of his time there. This was a notorious house of prostitution, kept by one Mrs. McCarty, just outside the limits of the city of Detroit. On the morning of November 28, Soule was found dead in the dance-room of the house, having been killed by stabs with a knife. Whether it was murder or suicide does not appear. Soule had owned the watch in question for several years. He was known to have had it shortly before his death. The fact that it was not upon his body when found aroused suspicion. The inmates of the house were questioned by the officers, and denied any knowledge of the watch. The respondent was questioned, and said that he never saw a watch on Soule, and never

knew that he had one, but that he saw that Soule wore a chain, and supposed he had a watch. A warrant was obtained for respondent's arrest, and the watch which had formerly belonged to Soule was found upon his person, in an inside vest-pocket. When the officer felt the watch in his pocket, respondent said: "I suppose that is what you want." Afterwards respondent said that he had loaned Soule some money on the watch and taken that as security.

Several of the inmates of this house were witnesses for the respondent, and gave evidence tending to sustain this claim of the respondent. Among these was one William Moran, an employé at the McCarty house, who had been convicted of several crimes, and had served a term in State prison. He was one of the jury summoned by the coroner to investigate the circumstances surrounding Soule's death. The prosecution gave evidence that this Moran was under arrest, and confined in the county jail, at the same time with respondent; that a conversation took place between them through the waste-pipe; that respondent said to Moran:

"I want you to swear that you saw me give Soule $32, and he give me the watch; if you will do that, they cannot convict me; "—

And that Moran replied that he would do it. The respondent testified that he got this watch from Soule the Sunday night before he died, by lending him $15 in cash and his bar-bill, and that the money and the bar-bill belonged to Mrs. McCarty.

We think, under this record, that it was properly left to the jury to determine whether the *corpus delicti* had been proven. Direct proof of the *corpus delicti* cannot always be obtained. It and the defendant's guilt can rest together on one foundation of circumstantial evidence. 1 Bish. Crim. Pro. (2d ed.) §§ 1070, 1071; *Johnson v. Com.,*

81 Ky. 325. It was proven that the watch was Soule's. Respondent admitted receiving it from him shortly before his death. He had no interest in it, according to his own story. He deliberately made false statements in regard to it, and when, if his story were true, he could have had no motive to lie. There was evidence from which the jury might find that he induced the witness Moran to swear falsely in order to acquit him. For the court to hold, under these circumstances, that there was no evidence of crime, would have been a clear usurpation of the proper function of the jury.

The circuit judge charged the jury fairly and properly on all questions involved. He said to them that the testimony must be that from which nothing but guilt can, in the natural order of things, be adduced, and that, if they found that the possession of the watch was for the purpose of securing a loan, they were bound to take the theory of innocence, and acquit the respondent.

The conviction must be affirmed.

Morse and Cahill, JJ., concurred with Grant, J.

Champlin, C. J. I do not think that there was any testimony proving that the crime of larceny had been committed. All the testimony of a criminating nature is as consistent with the innocence of respondent as with his guilt.

Long, J., concurred with Champlin, C. J.