PEOPLE v CASTANEDA

1. WITNESSES—CRIMINAL LAW—UNAVAILABLE WITNESSES—PRIVILEGE
   AGAINST SELF-INCRIMINATION—STATUTES.

   A witness who refuses to testify at trial, asserting his privilege
   against self-incrimination, may properly be found to be unavail-
   able for purposes of a statute which allows introduction of an
   unavailable witness's preliminary examination testimony, and
   no prejudice resulted to a defendant from introduction of such
   a witness's prior testimony where defense counsel had been
   present at the earlier hearings at which the testimony was
   given and where defense counsel admittedly communicated
   with the witness prior to trial and was not surprised at the
   witness's assertion of privilege (MCLA 768.26; MSA 28.1049).

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 29 Am Jur 2d, Evidence § 758.
   Claim of privilege by a witness as justifying the use in criminal
   case of his testimony given on a former trial or preliminary
   examination. 45 ALR2d 1354.
[2] 81 Am Jur 2d, Witnesses § 74.
[3] 81 Am Jur 2d, Witnesses § 518 et seq.
[4] 81 Am Jur 2d, Witnesses §§ 569–586.
   Prior conviction: effect of prosecuting attorney asking defense wit-
   ness other than accused as to prior convictions where he is not
   prepared to offer documentary proof in event of denial. 3 ALR3d
   965.
[5] 81 Am Jur 2d, Witnesses §§ 432, 433.
[6] 81 Am Jur 2d, Witnesses §§ 500–504.
[7] 75 Am Jur 2d, Trial § 724.
[9] 75 Am Jur 2d, Trial §§ 775–779.
   Propriety under Griffin v. California and prejudicial effect of unre-
   quested instruction that no inferences against accused should be
   drawn from his failure to testify. 18 ALR3d 1335.
   Comment or argument by court or counsel that prosecution evi-
   dence is uncontradicted as amounting to improper reference to
   accused's failure to testify. 14 ALR3d 723.
   Violation of Federal constitution rule (Griffin v. California) prohibit-
   ing adverse comment by prosecutor or court upon accused's
   failure to testify, as constituting reversible or harmless error. 24
   ALR3d 1093.

2. Witnesses—Criminal Law—Res Gestae Witnesses—Indorsement
—Production—Due Diligence—Appeal and Error.

Failure of the prosecution to indorse and produce a res gestae
witness may be excused when the prosecutor makes a showing
of due diligence in searching for the witness, and a trial judge's
finding of due diligence will not be overturned on appeal unless
a clear abuse of discretion is shown.

3. Witnesses—Criminal Law—Res Gestae Witnesses—Impeach-
ment—Statutes.

The people are obligated to call res gestae witnesses to testify in
a criminal trial, whether their testimony is favorable or unfa-
vorable, and a res gestae witness so called may be impeached
by the prosecution the same as though the witness had been
called by the defendant (MCLA 767.40a; MSA 28.980[1]).

4. Witnesses—Criminal Law—Impeachment—Prior Felony Con-
victions—Prejudice.

A witness may be impeached by inquiry about prior felony
convictions, but a prosecutor should present the witness for
whatever testimony he has to give before attempting to im-
peach him; a defendant was not prejudiced by the prosecutor
asking a witness, as his first question, about a prior conviction
where the question was objected to before it was answered, the
witness did not answer and a curative instruction was given.

5. Witnesses—Criminal Law—Character Witnesses—Defendant's
Prior Convictions—Prejudice.

A defendant was not prejudiced where the prosecutor asked the
defendant's character witness whether she knew of a prior
conviction of the defendant where the question was objected to,
the objection was sustained, and the jury was instructed to
disregard it because there was no such prior conviction and
where the record shows no bad faith on the part of the
prosecutor because there was an error in the conviction record.

6. Witnesses—Character Witnesses—Cross-Examination—Miscon-
duct of Defendant.

Prior clearance should be obtained from the trial judge as to the
questioning on cross-examination of any character witness
regarding any alleged misconduct of a defendant.

7. Drugs and Narcotics—Aiding and Abetting—Instructions to
Jury.

A trial court properly instructed a jury on aiding and abetting

where the defendant, who was charged with delivery of heroin, maintained that another person was the drug dealer and where from the testimony at trial it would be reasonable for the jury to believe that the other person was the dealer or supplier and that the defendant had assisted in effecting the sale for which he was charged.

8. Witnesses—Criminal Law—Refusal to Testify—Opportunity to Cross-Examine.

A defendant was not prejudiced by a witness's refusal to answer certain questions at trial because of a claim of Fifth Amendment rights and by the subsequent reading to the jury of the witness's testimony from the preliminary examination and at a guilty plea revocation hearing where the defendant vigorously cross-examined the witness at the preliminary examination and presented evidence in his own behalf at the hearing, the testimony which the witness did give at trial exculpated the defendant, and the witness did appear before the jury.

9. Criminal Law—Instructions to Jury—Adverse Inferences—Witnesses—Failure to Testify—Appeal and Error—Preserving Question.

A *sua sponte* instruction that the jury may not draw any adverse inference because of a witness's refusal to testify need not be given, and where a defendant did not request such an instruction the issue of whether the trial court erred by not giving such an instruction is not properly preserved for appeal.

Appeal from Ingham, Michael G. Harrison, J. Submitted January 9, 1978, at Lansing. (Docket No. 77-676.) Decided February 22, 1978.

Guadalupez B. Castaneda was convicted of delivery of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Michael G. Woodworth,* Chief Appellate Attorney, for the people.

*Earl J. Fretz* and *H. Eugene Bennett,* for defendant on appeal.

Before: Bronson, P. J., and R. B. Burns and R. E. A. Boyle,* JJ.

R. E. A. Boyle, J. Defendant was convicted by a jury of delivery of heroin in violation of MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a), and was sentenced to 5 to 20 years imprisonment. He appeals as of right.

The pertinent facts are as follows: On July 28, 1975, in the City of Lansing in this state, an undercover police officer was working with one Alfredo (Freddy) Velasquez, a paid informant, who was to set up a drug deal with defendant. After the deal was arranged, according to the testimony, the officer left Velasquez with defendant while the officer went to get the necessary money for the buy and also police assistance. The officer had been assured by defendant that the heroin would be delivered upon his return.

When the officer returned to the arranged meeting place at 500 East Grand River in Lansing, he was met by Velasquez, who showed him the heroin, which was in a bag in the nearby bushes. Defendant was nearby, and the officer testified he never saw this bag in defendant's possession. When the officer attempted to pay defendant, he refused receipt of the money and the arrest was then made.

At the preliminary examination, Velasquez testified as to arranging with defendant for the drug sale to the officer; that he had known defendant for five or six years and had previously dealt with him in drug transactions; that initially defendant was reluctant to deal with him on this occasion because of rumors Velasquez was a police informant; that defendant eventually agreed to deal

* Circuit judge, sitting on the Court of Appeals by assignment.

with Velasquez and provided a sample for him to try. He testified further that after the officer left to get some money to pay for the drug, defendant took the heroin from his possession and placed it in some bushes. Velasquez identified the heroin as that placed in the bushes by defendant. On the basis of the testimony by the officer and Velasquez, defendant was bound over for trial.

On May 10, 1976, pursuant to a plea agreement, defendant entered a plea of guilty to possession of heroin. However, on May 24, 1976, after a hearing, defendant's motion to vacate the plea was granted. At this hearing, Velasquez repudiated his testimony at the preliminary examination, stating defendant had never given him a sample to try and that the heroin that caused the arrest of defendant actually belonged to Velasquez and had been placed there earlier. He referred to one Jesse Garcia as the person who was the real drug dealer.

The trial judge ordered the guilty plea of defendant vacated and recommended perjury charges against Velasquez. After a motion to dismiss because of entrapment and a motion to quash the information were filed and denied, trial was had before a jury as a result of which defendant was convicted.

Defendant raises a number of issues, each of which we will discuss. We note from the record at the outset that the trial was marked with frequent wrangling between counsel and that the trial judge had the difficult task of keeping the trial under control.

Defendant contends the informant, Velasquez, was improperly declared an unavailable witness— thus permitting the introduction of his testimony from the preliminary examination—when he claimed his Fifth Amendment privilege because of

pending perjury charges against him arising out of his repudiation of his testimony at the preliminary examination. Defendant claims he was denied an adequate opportunity to prepare for argument about his unavailability, and that he should not have been declared unavailable because the prosecutor should have either granted Velasquez immunity or agreed to continue the case in order to dispose of the pending perjury charges against the witness.

We find no merit in defendant's claim as to this issue. Defense counsel was present at the hearing on defendant's plea withdrawal where the trial court recommended perjury charges be considered against Velasquez, who there repudiated his preliminary examination testimony. Moreover, defense counsel admitted having communicated with Velasquez prior to trial. He could not have been surprised that he would assert his Fifth Amendment rights.

MCLA 768.26; MSA 28.1049 clearly permits testimony of a witness at a preliminary examination to be read at the trial.

The trial judge permitted Velasquez's testimony at both the preliminary examination and at the hearing to vacate the guilty plea to be read at the trial. We note here defendant took advantage of the opportunity to examine Velasquez at the hearings. The trial judge properly ruled that in asserting his Fifth Amendment privilege, Velasquez had made himself "unavailable" to testify at trial. MCLA 768.26; MSA 28.1049. The propriety of using former testimony of a witness who asserts his Fifth Amendment privilege has been recognized, *People v Pickett,* 339 Mich 294, 306; 63 NW2d 681 (1954), and also that of a witness who merely refuses to testify. *People v Szeles,* 18 Mich

App 575, 577; 171 NW2d 550 (1969). A witness's physical unavailability is not required. Nor was it required that the prosecutor grant Velasquez immunity under MCLA 780.701; MSA 28.1287(101). See *People v Towlen,* 66 Mich App 577, 579–580; 239 NW2d 668 (1976). There was no showing by defendant of prejudice on this issue.

Defendant further contends that the production of two res gestae witnesses was not properly excused by the trial court. It appears from the record that when the arrest of defendant was made, it was while he was in a group of his friends and acquaintances. Some of these wanted to be elsewhere at the time and took off without the police being able to find out who were present or where they could be located. The identity of two of them, William Lile and Rudy Vella, was learned. Efforts made to contact Lile for trial included phone calls within and beyond this state, and contacts with an undercover unit which was believed to have means to locate him. It developed Lile could not be located several months previously in connection with another case of which circumstance defense counsel was aware. The court ruled that the people had used due diligence to locate him and excused his production.

Vella's name came into the case as someone allegedly present at the arrest of defendant, and defendant demanded he be produced as a res gestae witness. A continuance was granted until the next day by the court to give the prosecutor time to determine whether Vella could be located. The undercover officer then testified as to his efforts which included police department record checks, known addresses, known associates, phone and postal records. This was testified to the court outside the presence of the jury, which testimony

included the statement that Vella was not at the point where Velasquez was arrested and that Vella apparently had been picked up in all the confusion by an officer who could not remember Vella's name.

The trial court, observing that there was a conflict in the testimony as to whether Vella was present at the arrest, ruled that because sufficient reasonable efforts had been made to locate Vella, due diligence had been shown and his production excused.

It is well settled that failure to endorse and produce res gestae witnesses may be excused when the prosecutor makes a showing of diligence in searching for witnesses. *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975). A trial judge's findings of due diligence will not be overturned on appeal unless a clear abuse of discretion is shown. *People v Bell,* 74 Mich App 270, 274–275; 253 NW2d 726 (1977). The efforts to locate the witnesses satisfied the requirement of due diligence. *People v Blacksmith,* 66 Mich App 216, 220–221; 238 NW2d 810 (1975). We find no abuse of discretion in this area by the trial judge and no prejudicial error in those rulings.

Defendant contends there was reversible error committed by the prosecutor in impeaching the res gestae witness, Rodriguez, by the use of a prior conviction as the first question to him even though the jury was instructed to disregard the question.

The people were obligated to call res gestae witnesses to testify, whether their testimony be favorable or unfavorable. They may be impeached the same as though such witnesses had been called by the defendant. MCLA 767.40a; MSA 28.980(1). In this instance, Rodriguez was present at the time of defendant's arrest and also was in jail with

informant Velasquez when the latter stated defendant was not involved in the drug transaction for which he was being prosecuted. He was a res gestae witness and it was obvious to the prosecutor his testimony was going to be favorable to defendant. He was subject to impeachment by the people, and, in the discretion of the court, such may be done by inquiring about prior felony convictions. *People v Jackson*, 391 Mich 323; 217 NW2d 22 (1974). The prosecutor began his examination with a question regarding a prior conviction. This question was objected to before it was answered, the objection was sustained, and the jury instructed to disregard it. It would have been better practice for the prosecutor to present the witness for whatever testimony he was to give before attempting to impeach him. However, we find no prejudicial error in view of the fact the question pertained to the witness—not to the defendant—the witness did not answer and a curative instruction was given. *People v Chambers #1*, 64 Mich App 311; 236 NW2d 702 (1975).

Another contention of defendant is that the prosecution committed reversible error in asking defendant's character witness whether she knew of defendant's possession of marijuana conviction. The question was objected to and the objection sustained. The jury was instructed to disregard the question totally, because the court determined there was no such conviction. It appears from the record that there was no bad faith on the part of the prosecutor but that the law enforcement conviction record was erroneous.

Instead of its being harmful to defendant, it seems clear it would more likely be harmful to the prosecution in view of the trial court's assertion that no such conviction existed and the instruction

to disregard it totally. Accordingly, the directives in *People v Stedman,* 41 Mich App 393; 200 NW2d 370 (1972), relating to the form of the question and in *People v Robinson,* 70 Mich App 606; 247 NW2d 308 (1976), relating to prior clearance with the trial judge as to such questioning need not here be considered in view of the prompt action of the trial judge.

We do, however, recommend that the rule in *Robinson, supra,* be henceforth extended to include general character witnesses and not be limited to those witnesses to defendant's reputation for truth and veracity, so that in every case involving cross-examination of *any* character witness as to any alleged misconduct of a defendant, prior clearance must be obtained from the trial judge. Thus, the possibility of prejudicing a jury may be avoided.

Defendant asserts the prosecution improperly argued to the jury it was the jury's duty to convict defendant. Our examination of the prosecutor's argument in its entire context persuades us that he in no way suggested the jury should relinquish its fact-finding function to defer to any demand of his. In addition, the trial judge recalled the jury after defense counsel objected to the passages in the prosecutor's final argument, and instructed them they had no duty to find defendant guilty unless the evidence convinced them of his guilt beyond a reasonable doubt. There was no error.

Defendant argues that the trial judge was in error in instructing the jury on aiding and abetting. We have examined the record and are unable to agree. It was the theory of the defense that Jesse Garcia was the drug dealer, and that informant's testimony against defendant was the result of his fear of Garcia.

The testimony of Velasquez at both the prelimi-

nary examination and the plea revocation hearing was placed before the jury, as was the testimony of the undercover officer who testified as to his direct communications with defendant and the arrangement to buy from defendant. It was reasonable for the jury to believe Garcia was the actual drug dealer or supplier and that defendant had assisted in effecting the sale, which would constitute the necessary concert of action for aiding and abetting. See *People v Mann,* 395 Mich 472; 236 NW2d 509 (1975). On the basis of all the evidence and the logical and reasonable inference therefrom, we think the instruction in this case was proper.

Defendant's claim that the informant Velasquez waived his Fifth Amendment privilege when he answered questions relating to defendant's lack of involvement in the crime is without merit. We are mindful that the record discloses defense counsel agreed with the prosecution that Velasquez would be put on the stand even though defense counsel had earlier communicated with him and that at this trial Velasquez was represented by counsel who advised him to rely on the Fifth Amendment. We do not think that he waived his privilege. But whether he did or not, we think that defendant was not prejudiced by Velasquez's failure to testify at trial.

Defendant did not, as he contends, have his right to confront and right to secure witnesses in his favor violated because Velasquez's prior testimony at the preliminary examination and at the guilty plea revocation hearing was read to the jury. Defendant vigorously cross-examined at the preliminary examination and at the guilty plea revocation hearing presented evidence in his behalf. Moreover, the testimony given at trial was favorable to and exculpated defendant, and Velas-

quez appeared before the jury. We find that defendant was not prejudiced.

Defendant asserts the trial judge should have *sua sponte* instructed the jury not to draw any inference adverse to defendant from Velasquez's failure to testify. Inasmuch as defendant did not request the instruction, the issue has been waived and is not properly preserved for appeal. *People v Barbeaux,* 73 Mich App 327, 329–330; 251 NW2d 307 (1977). We have been cited to no authority that such an instruction must be given. Manifest injustice will not result from any failure to consider the issue. Since Velasquez had given testimony favorable to and exculpating defendant, it is unlikely any inference adverse to defendant would result from his taking the Fifth Amendment. *People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977), cited by defendant, is not in point. There Giacalone's *charged accomplice* was the person asserting the privilege.

Lastly, defendant claims the trial court should have found entrapment as a matter of law. We disagree. An examination of the record does not disclose any conduct on the part of the police or the informant that would be considered entrapment. There is no evidence the informant in any way coerced or played upon the sympathies of defendant, or that defendant ultimately agreed to do an act which he otherwise would not do. Defendant did not sustain his burden of proof on this issue.

We find no prejudicial error. The defendant had a fair trial. His conviction is affirmed.