# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CEDRICK LEDALE TAYLOR,

      Defendant-Appellant.

UNPUBLISHED
January 17, 2017

No. 329789
Eaton Circuit Court
LC No. 15-020030-FH

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Defendant, Cedrick Ledale Taylor, appeals as of right his convictions, following a jury trial, of third-offense domestic violence, MCL 750.81(4),[1] unlawfully driving away a motor vehicle, MCL 750.413, and bribing, intimidating, or interfering with witnesses, MCL 750.122(7)(a). The trial court sentenced Taylor as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 6 to 30 years' imprisonment for his domestic violence conviction, 18 months to 20 years' imprisonment for his unlawfully driving away conviction, and 4 to 15 years' imprisonment for his interfering with a witness conviction. We affirm.

## I. FACTUAL BACKGROUND

The complainant testified that she was living with Taylor in November 2014. They had an argument on November 16, 2014, and she asked Taylor to leave her home. Taylor refused. During a further argument, Taylor shoved her down, grabbed her, attempted to strike her, and threatened to kill her if he found another person in her house when he returned. Taylor took her keys and left in a truck that belonged to the complainant's mother. The complainant eventually called the police. Grand Ledge Police Officer Mark Sleep testified that he took pictures of the complainant's injuries and eventually found and arrested Taylor. The complainant also testified that Taylor engaged in a series of contacts to persuade her not to testify, including sending messages through a friend and sending a letter to her teenage son.

---

[1] The provision for third-time offenders is now set forth as MCL 750.81(5). See 2012 PA 366 and 2016 PA 87.

Taylor testified that though he had a good relationship with the complainant, they argued after the complainant found pictures of his former partner on his phone. Taylor testified that the complainant threw the truck keys at him and told him to leave for an appointment. Taylor did not immediately leave because the complainant was upset and crying, but he left after the complainant assured him that she loved him. When he returned to the house, the door was locked, and he was arrested at a gas station on his way to return the truck to the complainant's mother.

The prosecution admitted testimony of an alleged victim of a previous domestic violence incident in a case that was pending before the Ingham Circuit Court. The prosecuting attorney indicated that she had spoken with the victim on the Friday before trial, and the victim assured her that she would be in court to testify. However, on the morning of trial, the victim called and stated that she would be unable to testify. The prosecuting attorney sent the prosecution's investigator to the victim's home and another home to attempt to find her, and asked the victim's parents where she was, but was unable to locate her. The prosecuting attorney argued that these were reasonable efforts to secure the witness, and the trial court ultimately agreed.

Accordingly, the victim's preliminary examination testimony was read into the record. This testimony included that in August 2012, Taylor punched her in the face and gut during an argument, and in September 2012, he began punching her in the face in a moving vehicle. The victim injured her arm when she jumped from the vehicle.

The jury found Taylor guilty as previously stated. Taylor now appeals, contending that the trial court erroneously violated his right to confront the witnesses against him by admitting the alleged previous victim's testimony.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion whether to admit an unavailable witness's testimony. *People v Starr*, 89 Mich App 342, 345; 280 NW2d 519 (1979). A trial court abuses its discretion when it chooses an outcome falling outside the principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Further, "[a] trial court's determination of due diligence is a factual matter and the trial court's findings will not be reversed unless clearly erroneous." *People v Gunnett*, 182 Mich App 61, 67; 451 NW2d 863 (1990). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

## III. ANALYSIS

Taylor argues that admission of an alleged previous victim's testimony was improper because the prosecution did not diligently attempt to secure her as a witness. We disagree.

The Sixth Amendment of the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee an accused the right "to be confronted with the witnesses against him." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). However, the trial court does not violate the defendant's right to confrontation by admitting the prior testimony of an unavailable witness if the prosecution made good-faith efforts to obtain the witness's presence

at trial and the testimony is sufficiently reliable. *Barber v Page*, 390 US 719, 724-725; 88 S Ct 1318; 20 L Ed 2d 255 (1968); *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). Generally, testimony taken at a preliminary examination is sufficiently reliable. *Id*.; MCL 768.26.

"A prosecutor who endorses a witness under MCL 767.40a(3) is obligated to exercise due diligence to produce that witness at trial." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). Whether the prosecution made good-faith efforts to secure a witness depends on the circumstances of each case. *Bean*, 457 Mich at 684. The prosecution must inquire of persons who could help them locate the witness, check out specific leads, and attempt to locate witnesses in foreign jurisdictions. *Id*. at 698-690. Tardy or incomplete efforts to locate the witness are not sufficiently reasonable. *People v Dye*, 431 Mich 58, 68; 427 NW2d 501 (1988) (opinion by LEVIN, J.). However, the trial court need only find that the prosecution engaged in reasonable efforts to locate and secure the witness, not that it did everything possible. *People v George*, 130 Mich App 174, 178; 342 NW2d 908 (1983).

In this case, the prosecution engaged in several steps to locate the witness, and she agreed to testify. However, on the day of trial, the witness abruptly decided not to testify and eluded the prosecution's investigator. The prosecution's investigator attempted to find the witness by checking her address, speaking with her parents, and checking another address where she might have gone.

Under the circumstances, we conclude that the prosecution's efforts were not tardy or incomplete. On the day of trial, the prosecution was faced with the unexpected absence of a witness who had previously agreed to testify. While Taylor suggests that the prosecution could have utilized a bench warrant to compel the witness to testify, there is no indication that the witness could have been located and served with such a warrant without delaying the trial. We are not definitely and firmly convinced that the trial court made a mistake when it found that the prosecution engaged in reasonably diligent efforts to secure the witness's testimony in this case.

Additionally, there was no indication that the preliminary examination testimony in this case was not sufficiently reliable. See *Bean*, 457 Mich at 684. We conclude that the trial court did not abuse its discretion by admitting it.

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray